**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Frank Staples**</u>

   **v.**

<u>**NH State Prison, Warden, et al.**</u>

Case No. 16-cv-33-PB
Opinion No. 2017 DNH 046

<u>**MEMORANDUM AND ORDER**</u>

Frank Staples practices Taoism and his religious beliefs require that he not shave his beard.  Staples claims that he was harassed while incarcerated at the New Hampshire State Prison because he refused to comply with the prison's beard policy.  He asserts that the prison denied him a Taoist diet, access to Taoist literature, and prevented him from obtaining religious counseling.  He also alleges that he was harassed after filing grievances and a lawsuit in an effort to protect his constitutional rights.  The harassment took the form of physical and mental abuse, placement in restrictive housing, and denial of parole.

Staples has filed a rambling, vague, and scattershot amended complaint against the Prison Warden, the Commissioner of the Department of Corrections, members of the Parole Board, the Prison Chaplain, and fourteen other prison employees.[1]  He

---

[1] I will refer to the amended complaint (doc. no. 33) simply as "the complaint."

asserts claims under the First Amendment's Free Exercise, Establishment, and Petition Clauses, the Fourteenth Amendment's Equal Protection and Due Process Clauses, and the Eighth Amendment.[2]  Defendants have responded with a motion to dismiss for failure to state a claim.  Doc. No. 38.

## I.   BACKGROUND[3]

The New Hampshire State Prison has a policy prohibiting inmates from growing beards longer than 1/4 inch.  The policy aims to address security concerns posed by longer beards, which can conceal contraband and make it difficult to identify inmates.  Staples refused to comply with the prison's beard policy and grew a long beard because his religious beliefs preclude him from maintaining a shorter beard.  As a result, he was harassed, denied parole, and placed in restrictive housing.

Staples was placed in restrictive housing for much of his incarceration.  On entering the prison as a pretrial detainee, he was placed in the Special Housing Unit (SHU), where inmates are locked in their cells for twenty-three hours a day.  He

---

[2] The complaint also asserts violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA).  I dismissed Staples' RLUIPA claims in a prior order (doc. no. 41).

[3] I draw the background facts from the complaint (doc. no. 33). I assume that the facts pleaded in the complaint are true, and I construe them in the light most favorable to Staples.  See Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 115 (D.N.H. 2012).

remained there for much of his incarceration, with exceptions
that included stints in the Secure Psychiatric Unit (SPU), the
Health Services Center, the "hole," and the Closed Custody Unit
(CCU).[4]  He was denied a transfer to the Medium South Unit —
which was less restrictive, offered better amenities, and would
have improved his chances of being released on parole — all
because of security concerns about his beard.

Staples first entered the prison as a pretrial detainee,
but in April 2013 was convicted and sentenced to two consecutive
sentences.  Although Staples had accumulated enough pretrial
credit to be immediately eligible for parole on his first
sentence, the parole board initially denied him parole because
he refused to attend his parole hearing.  At a second hearing
later that year, the board paroled Staples from his first
sentence to his second sentence but refused to give him any
credit on the second sentence for time served on the first.  In
April 2014, the board declined to parole Staples on his second
sentence because of his security classification, which the board
members knew was based on his refusal to shave.  Staples was
finally granted parole on his second sentence in April 2015, but
his release from prison was delayed until October 2015.

---

[4] Although Staples alleges that some of his housing placements
were based on his beard, he does not allege a reason for others,
including his initial SHU placement.

In addition to being placed in restrictive housing and
denied parole, Staples alleges that correctional officers
harassed him because he refused to shave his beard.  Officer
Paul Cascio repeatedly threatened to forcefully shave Staples'
beard and instructed prison staff to go to Staples' cell every
day and prepare him for shaving.  Another officer, Robert
Parent, attempted to pressure Staples to shave by asking, loudly
enough to be overheard by other inmates, "Why are you PC'ing?
Why do you want to PC?"  Staples alleges that the term "PC"
refers to "an inmate who is seen as an informant or 'snitch,'"
and an inmate carrying that label "could be extorted, beaten,
raped and even killed by other inmates."  Doc. No. 33 at 9.
Officer Parent then gave Staples a statement form and instructed
him to "fill it out telling me why you want to be PC."  Id.
When Staples tore the form in half, Officer Parent "slammed
[him] against a [cement] support pillar."  Id. at 10, 27.
Staples hit his head and severely injured his shoulder.  In
another instance of harassment, Staples was transferred "from
cell to cell for no apparent reason other than retaliation,"
including four transfers in one month.  Id. at 14.  At one cell,
Officer Marc Miller threatened to pepper-spray Staples if he did
not clean another inmate's feces.  Around this time, Staples
went on a hunger strike and became suicidal.  Soon after, in

November 2014, Staples filed a pro se complaint in this court challenging defendants' refusal to accommodate his beard.[5]

Staples also alleges that defendants refused to accommodate his Taoism in other ways.  The prison chaplain did not visit him or provide him with religious counseling and services, the prison library did not have Taoist reading materials, even though materials from other religions were available, and Staples' request for a religious diet was not accommodated, even though other religious diets were accommodated.  In response, Staples repeatedly filed internal grievances.

Defendants reacted to the internal grievances and lawsuit by retaliating against Staples.  Shortly after Staples filed his lawsuit, he was placed in punitive segregation, where he was locked in his cell for 23 hours a day.  Defendants also gave him a "Hurt Feelings Report" — "a fake grievance report that mocks complaints to law enforcement as 'whining.'"  Id. at 16. Officer Scott Marshall inquired whether Staples had received the report, and later pepper-sprayed Staples without justification while he was naked in his cell.  In another incident, Officer

---

[5] Staples asserted various RLUIPA and constitutional claims.  The court issued a preliminary injunction requiring the defendants to lift certain restrictions based on his beard.  Staples v. Gerry et al., 2015 DNH 132 (July 2, 2015).  After Staples was released from prison in October 2015, the parties agreed to dismiss the case without prejudice.

5

Miller "threatened to throw [Staples] down a set of stairs and then 'ride' him down the stairs."  Id. at 19.

Staples' treatment while incarcerated caused him physical, psychological, and emotional harm, including suicidal ideation. On October 9, 2015, Staples was released on parole, and this suit followed.

## I.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citation, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be

dismissed.  Id.  Second, I credit as true all non-conclusory
factual allegations and the reasonable inferences drawn from
those allegations, and then determine if the claim is plausible.
Id.  The plausibility requirement "simply calls for enough fact
to raise a reasonable expectation that discovery will reveal
evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The
"make-or-break standard" is that those allegations and
inferences, "taken as true, must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda–Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to
relief above the speculative level. . . .").

## II.  ANALYSIS

Staples presents a panoply of constitutional claims seeking
damages pursuant to 42 U.S.C. § 1983.[6]  Defendants argue that I
should dismiss the complaint in its entirety because the parole
board members are entitled to absolute immunity, and the
remaining defendants are entitled to qualified immunity.  I
examine each of the defendants' arguments in turn.

---

[6] Staples also seeks declaratory relief.  For the reasons stated
in my prior order, however, Staples may not obtain such relief
in the present action.

7

A.   **Absolute Immunity**

Staples has sued every member of the parole board claiming that they denied him parole because he refused to shave his beard for religious reasons.  The board members argue in response that they are entitled to absolute immunity from damages for their parole decisions.  "[P]arole board members are shielded by absolute immunity in § 1983 actions seeking monetary damages for actions taken by the members in the performance of their official duties." Johnson v. R.I. Parole Bd. Members, 815 F.2d 5, 6 (1st Cir. 1987) (per curiam).  The board's official duties include "processing parole applications and deciding whether to grant, deny, or revoke parole." Id. (describing Ninth Circuit's view approvingly).  Staples' argument for stripping the parole board members of absolute immunity is old hat: "plaintiff's complaints regarding the Parole Board Members, including their alleged . . . failure to consider properly the parole factors enumerated in state law and Parole Board guidelines . . . clearly involve actions in their adjudicatory capacity and were not taken in the clear absence of all jurisdiction." Mattatall v. Rhode Island, No. CA 07-234 ML, 2009 WL 3514634, at *3 (D.R.I. Oct. 29, 2009).  As the very cases cited by Staples conclude, parole board members retain absolute immunity in such circumstances even if a defendant is denied parole in retaliation for exercising First Amendment

rights.  See, e.g., Hilliard v. Bd. of Pardons & Paroles, 759 F.2d 1190, 1193-94 (5th Cir. 1985) (per curiam); Serio v. Members of La. State Bd. of Pardons, 821 F.2d 1112, 1114 (5th Cir. 1987) ("Although we find the complaint sufficient to state a claim, we affirm the dismissal of the claim for damages because it is barred by the defendants' [absolute] immunity."). As these cases demonstrate, the board members are entitled to absolute immunity.

**B.**   **Qualified Immunity**

The remaining defendants argue that they are entitled to qualified immunity.  "Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Marrero-Méndez v. Calixto-Rodríguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  "If either of the two prongs is not met — i.e., if the facts do not show a constitutional violation or the right in question was not clearly established — the officer is immune."  Id.  "Either prong may be addressed first. . . ."  Id.

1.   Free Exercise Clause

Staples claims that defendants violated his right to freely exercise his religion both by penalizing him for refusing to

comply with the prison's beard policy and by denying him access
to resources he needs to practice his religious beliefs.
Defendants argue that they are entitled to qualified immunity on
Staples' Free Exercise Clause claim because they did not commit
a constitutional violation by enforcing the beard policy, and
Staples' allegations regarding his access to Taoist resources
are too vague to state a viable claim for relief.

Defendants are entitled to qualified immunity on Staples'
beard claim because he does not allege a Free Exercise Clause
violation on this basis.  The New Hampshire State Prison
prohibits beards longer than 1/4 inch irrespective of religion.
A neutral law or policy such as the beard policy does not
ordinarily violate the Free Exercise Clause, see Employment
Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 879 (1990),
and Staples does not allege that the policy was enforced
selectively.  Cf. Church of the Lukumi Babalu Aye, Inc. v. City
of Hialeah, 508 U.S. 520, 543 (1993).  Moreover, the First
Circuit has already rejected a free exercise challenge to the
prison's 1/4 inch beard limit.  See Kuperman v. Wrenn, 645 F.3d
69, 77 (1st Cir. 2011) (applying deferential Turner standard);
see also Turner v. Safley, 482 U.S. 78, 81, 89 (1987) (applying
"lesser standard of scrutiny" to assess prison rule).[7]  Thus,

---

[7] Staples' reliance on Holt v. Hobbs, 135 S.Ct. 853, 859 (2015)
is inapposite.  That decision did not address the Free Exercise
Clause, let alone clearly establish a violation under it.  Id.

10

defendants are entitled to qualified immunity on Staples' beard claim because Staples fails to state a viable Free Exercise Clause violation on this basis.

Staples also claims that defendants violated the Free Exercise Clause by denying him access to Taoist resources.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sepúlveda-Villarini, 628 F.3d at 29 (quoting Iqbal, 556 U.S. at 678)).  Staples vaguely alleges that his request for "a religious diet" was denied, he was denied unspecified reading materials on Taoism, and Taoist "services" or "counsel" were not made available to him at the prison.  His bare-boned allegations, however, are conclusory.  For example, Staples does not describe his desired diet, reading materials, services, or counseling.  He does not explain how these resources are related to his religious beliefs.  Nor does he allege that he was prohibited from receiving his desired materials, services, and counseling, or that their unavailability resulted from anything other than an inability to obtain donations in the way that similar materials have been donated to the prison by other

_____

(finding RLUIPA violation where failure to accommodate inmate's 1/2 inch beard substantially burdened his religious practice and was not least restrictive means of advancing compelling government interest).

religions.  I cannot determine from these vaguely pleaded allegations that Staples has a viable Free Exercise Clause claim based on any of these alleged deprivations.  Accordingly, I dismiss his Free Exercise Clause claim on this basis as well.

> 2.   Establishment Clause

Staples claims that defendants violated the Establishment Clause by accommodating other religions but not Taoism. Defendants respond by arguing that they are entitled to qualified immunity under the first prong of the qualified-immunity test because Staples does not allege that they did more than enforce religiously neutral policies.

The First Amendment's Establishment Clause bars a state from preferring one religion over another, Larson v. Valente, 456 U.S. 228, 246 (1982), but states remain free to "accommodate religious practices . . . without violating the Establishment Clause." Cutter v. Wilkinson, 544 U.S. 709, 713 (2005) (alteration in original) (quoting Hobbie v. Unemployment Appeals Comm'n, 480 U.S. 136, 144–145 (1987).

Staples fails to plausibly allege that defendants did anything other than evenhandedly administer religiously neutral policies.  First, Staples' claims that he was treated differently from others based on his religious beliefs are fatally vague, as I described in evaluating his Free Exercise Clause claim.  Second, Staples does not plausibly allege that

12

the prison did anything other than allocate limited prison
resources based on demand or accept donated resources on a
neutral basis.  See Marrero-Méndez, 830 F.3d at 44 (describing
governmental neutrality as "the organizing principle of the
Establishment Clause"); cf. Cruz v. Beto, 405 U.S. 319, 322 n.2
(1972) (per curiam); Cutter, 544 U.S. at 723.  For example,
although the prison library contained books on many religions
but not Taoism, Staples does not allege that defendants did
anything other than accept donated books.  Cf. Farrow v.
Stanley, 2005 DNH 146, 30-31 (D.N.H. Oct. 20, 2005) (noting that
state law entails neutrality).  That policy suggests only
permissible religious accommodation, not the establishment of
religion.  See Glenn v. N.H. State Prison Family Connections
Ctr., No. 11-cv-475-JD, 2013 WL 3776433, at *5 (D.N.H. July 17,
2013).  Accordingly, I dismiss Staples' Establishment Clause
claim.

    3.   Retaliation

    Staples claims that defendants retaliated against him for
exercising his First Amendment right to file grievances and a
lawsuit.  Defendants argue that they are entitled to qualified
immunity on this claim because the retaliatory conduct was de
minimis.

    "[R]etaliation against a prisoner's exercise of
constitutional rights is actionable."  Hannon v. Beard, 645 F.3d

45, 48 (1st Cir. 2011).  To make out a retaliation claim,
Staples must allege that he exercised a constitutional right,
which caused defendants to respond by retaliating with adverse
conduct that is more than de minimis.  Starr v. Dube, 334 F.
App'x 341, 342 (1st Cir. 2009) (per curiam) (unpublished).
Adverse conduct is not de minimis if "inmates of 'ordinary
firmness' would be deterred from continuing to exercise their
constitutional rights."  Starr, 334 F. App'x at 343.

After Staples filed grievances and a legal action
contesting his treatment, he was given a "Hurt Feelings Report"
that mocked him.  Doc. No. 33 at 16.  While mocking Staples, by
itself, is not sufficiently severe to support a retaliation
claim, the complaint also alleges that Officer Marshall asked
Staples whether he had received the fake report and later
pepper-sprayed him.  Pepper-spraying Staples obviously is more
than de minimis adverse conduct, and Officer Marshall's inquiry
about the fake report plausibly suggests a retaliatory motive in
response to Staples' lawsuit and grievances.  Thus, Staples has
minimally pled a First Amendment retaliation claim against
Officer Marshall.[8]

---

[8]  Staples also vaguely alleges that he lacked "reasonable"
access to legal resources, that "various members of the prison
staff . . . [went] through his legal papers," and that his
cognitive impairments were not accommodated.  Doc. No. 33 at 16,
26.  He does not allege sufficient factual detail concerning
these claims.  Nor does he identify the responsible defendants.
Thus, Staples fails to state a First Amendment claim for

The other defendants are entitled to qualified immunity
because Staples fails to plead sufficient supporting facts to
support a plausible claim against them.  For example, Staples
alleges that "[o]n a number of occasions, members of the staff
at the N.H. State Prison used various means to retaliate
against" him.  Doc. No. 33 at 26.  This claim is simply too
vague to support a retaliation claim against any other
defendants.

    4.   <u>Due Process</u>

Staples argues that defendants denied him due process of
law by unjustifiably placing him in restrictive housing.
Defendants respond that they are entitled to qualified immunity
on this claim both because Staples does not have a clearly
established constitutionally protected liberty interest in any
particular housing assignment and because Staples does not
allege that he was denied any constitutionally required process.

   "The protections of the Due Process Clause of the
Fourteenth Amendment are triggered if there is a deprivation of
a protected [liberty] interest . . . ."  <u>Porter v. N.H. Dep't of
Corr.</u>, No. 13-cv-268-PB, 2014 WL 457941, at *3 (D.N.H. Feb. 4,
2014).  "For a prisoner, such a deprivation occurs when the
prison 'imposes atypical and significant hardship on the inmate

---

inadequate access to courts against any of the other defendants.

in relation to the ordinary incidents of prison life.'"
Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting
Sandin v. Conner, 515 U.S. 472, 484 (1995)).  "Neither the
Supreme Court nor the First Circuit has established a baseline
against which the parameters of 'an atypical and significant
hardship' are to be measured."  Perry v. Spencer, No. 12-12070-
MPK, 2016 WL 5746346, at *13 (D. Mass. Sept. 30, 2016), appeal
docketed, No. 16-2444 (1st Cir. Dec. 15, 2016).  In other
circuits, the meaning of the "hardship test has . . . become the
source of major disagreement."  Skinner v. Cunningham, 430 F.3d
483, 486-87 (1st Cir. 2005); see Aref v. Lynch, 833 F.3d 242,
252-55 (D.C. Cir. 2016)).  On this basis, defendants argue that
Staples' housing placement did not deprive him of a clearly
established liberty interest in any particular housing
assignment.

     I need not determine whether Staples has been deprived of a
protected liberty interest.  Even if Staples' housing deprived
him of a clearly established liberty interest, the complaint
fails to allege that he was denied any procedural protection
afforded by the Fourteenth Amendment.  See Skinner, 430 F.3d at
486.  A liberty deprivation "does not mean a [due process]
violation: it is merely the precondition for a due process
hearing."  Id.; see Wilkinson v. Austin, 545 U.S. 209, 229
(2005) (noting that Hewitt describes appropriate process for

16

inmates in administrative segregation); Hewitt v. Helms, 459 U.S. 460, 472 (1983) (describing process due).  Although Staples charges that the decision to segregate him was not justified, he fails to allege that he was denied any constitutionally required process, such as notice, a hearing, or some other opportunity to be heard.  Thus, defendants are entitled to qualified immunity on Staples' due process claim because Staples fails to allege a viable claim that he was denied due process.

5.   Eighth Amendment[9]

Staples alleges that he was subjected to cruel and unusual punishment by various defendants during his tenure at the New Hampshire State Prison.

_____

[9]   Staples also argues that the facts that give rise to his Eighth Amendment excessive force claim also support a substantive due process claim.  Because, however, the Eighth Amendment "provides an explicit textual source of constitutional protection" against excessive force by government officers, "that Amendment, 'not the more generalized notion of substantive due process,' must be the guide for analyzing" Staples' excessive force claim.  See Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); Cole v. Thyng, No. 11-cv-018-JL, 2011 WL 6020804, at *1 (D.N.H. Nov. 8, 2011), report and recommendation adopted, No. 11-CV-18-JL, 2011 WL 6018272 (D.N.H. Dec. 2, 2011); see also Davis v. Rennie, 264 F.3d 86, 98 n.9 (1st Cir. 2001) (noting that a "convicted prisoner may bring a claim for use of excessive force under the Eighth Amendment").  Thus, Staples fails to state a substantive due process claim.

Relatedly, I do not construe the complaint to assert a distinct claim under the Fourth Amendment.  Although the complaint fleetingly mentions the Fourth Amendment, neither party discusses it.

The Eighth Amendment prohibits prison officials from inflicting "cruel and unusual punishments" on inmates.  U.S. Const. amend. VIII; see Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  This includes a prohibition on using excessive force. See id.  "[T]he core judicial inquiry" in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id.  "The relevant factors . . . include: (1) the need for force; (2) the relationship between the need for force and the amount of force applied; (3) the extent of any injury inflicted; (4) the 'threat "reasonably perceived by the responsible officials"'; and (5) the 'efforts made to temper the severity of a forceful response.'"  Roux v. Hillsborough County Sheriff's Dep't, No. 12-cv-416-PB, 2013 WL 2177901, at *2 (D.N.H. May 17, 2013) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Applying these factors, Staples states a clearly established excessive force claim against Officer Parent. Staples alleges that Officer Parent "slammed [him] against" a cement pillar without justification.  Staples hit his head and severely injured his shoulder, which required treatment and was exacerbated by preexisting medical conditions.  As alleged, Officer Parent used excessive force.  Staples also states a clearly established excessive force claim against Officer

18

Marshall for pepper-spraying Staples without justification while
he was naked in his cell.[10]  See, e.g., Treats v. Morgan, 308
F.3d 868, 872 (8th Cir. 2002).

Lastly, Staples asserts claims against "various staff
members" on the basis of conclusory allegations.  These claims
fail because the complaint does not provide notice of which
claims are being brought against which defendants and on what
basis.[11]  For example, Officer Leo Deusault is mentioned in a
sentence in the complaint alleging that Officer Deusault found
it "funny" that someone else had filed a disciplinary report
against Staples.  Doc. No. 33 at 12.  Because defendants like
Officer Deusault lack fair notice of the basis for any claims

---

[10]  Obviously, not every use of pepper spray against an inmate
will support an Eighth Amendment claim.  In this Memorandum and
Order, I merely hold that Staples has stated a minimally
sufficient, clearly established claim that Marshall's use of
pepper spray was unconstitutional.

Staples also seeks to hold both Officer Parent and Officer
Miller liable for Eighth Amendment violations based on conduct
and statements by these defendants that caused Staples emotional
distress but no physical injury.  I dismiss these claims because
Staples has made no effort to respond to defendants' contention
that Staples cannot recover damages for an Eighth Amendment
violation under such circumstances.

[11] Staples also fails to state an Eighth Amendment claim based on
his transfers between cells.  The complaint labels the transfers
"constant," but only alleges that Staples was transferred four
times in one particular month.  This fails to state a claim for
"cruel or unusual punishment."  See Crouch v. Wooley, No. 15-cv-
01372-NJR, 2016 WL 192650, at *5 (S.D. Ill. Jan. 15, 2016)
(dismissing similarly pled claim); cf. Purvis, 929 F.2d at 826
n.8.

asserted against them, I conclude that Staples fails to state an Eighth Amendment claim except as asserted against Officers Parent and Marshall.[12]

### III. **CONCLUSION**

For the reasons stated, I grant in part and deny in part defendants' motion to dismiss (Doc. No. 38) and Staples' response (Doc. No. 40).  I dismiss Counts III, IV, V, VI (except to the extent that the complaint asserts a retaliation claim against Officer Marshall), and Counts VII and VIII (except to the extent that the complaint asserts Eighth Amendment claims against Officers Parent and Marshall).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 17, 2017

Cc: Donna J. Brown, Esq.
    Francis Charles Fredericks, Esq.
    Seth Michael Zoracki, Esq.

---

[12] The complaint fleetingly invokes the Equal Protection Clause, but Staples has not responded to defendants' arguments for dismissal of his equal protection claim.  Because the complaint does not plausibly allege that defendants discriminated against Staples because of his Taoist beliefs, I conclude that defendants are entitled to qualified immunity under the first prong of the qualified immunity test.