```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Frank Staples**

    v.                                                      Case No. 16-cv-33-PB
                                                             Opinion No. 2018 DNH 136

**NH State Prison Warden, et al.**


### MEMORANDUM AND ORDER

    Frank Staples, a former inmate at the New Hampshire State Prison, is a practicing Taoist. He invoked his religious beliefs when refusing to comply with a prison policy that prohibits inmates from having beards longer than 1/4 inch. He then challenged the beard policy and asserted additional claims against multiple prison officials in successive lawsuits. In a prior order, I dismissed Staples' claims that the defendants violated his First and Fourteenth Amendment rights by attempting to enforce the beard policy against him. Staples v. NH State Prison, Warden, 2017 DNH 046. I also determined that Staples could not recover on his claims based on the Religious Land Use and Institutionalized Person Act, 42 U.S.C. § 2000cc-1. Staples v. NH State Prison, Warden, 2017 DNH 023.

    Staples' remaining claims allege that Correctional Officer Robert Parent used excessive force against him on September 12, 2013, and Correctional Officer Scott Marshall used excessive

force and unlawfully retaliated against him on July 25, 2015. This Memorandum and Order addresses defendants' summary judgment motion challenging both claims.

## I. BACKGROUND

### A. 2013 Incident

On September 12, 2013, prison officials attempted to transfer Staples and six other inmates from the Special Housing Unit (SHU) to the Closed Custody Unit (CCU). Doc. No. 49-2 at 8. At the time, Parent was the sergeant in charge of the CCU. Doc. No. 49-13 at 8.

CCU inmates are required to comply with the prison's beard policy. Doc. No. 49-13 at 10. Accordingly, Staples and the other inmates were brought to Parent's office without handcuffs and he instructed them to shave. Doc. No. 49-2 at 10. Staples, however, repeatedly refused to comply with Parent's directive. Id. at 8. During one exchange, Parent told Staples that he needed to comply because "[t]his is my unit [and] I control my unit." Id. Staples responded by saying "[t]his is my face, and I control my face." Id. Eventually, Parent told Staples "[a]ll right, I am going to send you back to SHU PC."[1] Id. When Staples again refused to shave, Parent handed Staples a

---

[1] "PC" is protective custody. Most inmates on PC status are assigned to SHU.

2

statement form and instructed him to "write down why you want a PC." Id. Staples refused to sign the form and instead held it in front of Parent at arm's length and tore it in half. Id. at 11. Parent responded by grabbing Staples' right arm, forcefully turning and pushing him into a concrete support pillar, and handcuffing him behind his back. Id. Staples hit his head on the pillar during Parent's maneuver and he later experienced significant head, chest, and shoulder pain. Id.

After Staples was handcuffed, he was led to another secure area and asked if he wanted medical attention, which he accepted. Doc. No. 49-2 at 13. Nurse Donna Dufresne examined Staples and noted that she "did not see any injury to Inmate Staples' head . . . nor did Inmate Staples complain to [her] that he had injured his head." Doc. No. 49-8 at 3. Staples later claimed that he had suffered a concussion, but the record does not contain medical evidence to support his claim. Doc. No. 49-2 at 14.

**B. 2015 Incident**

Staples filed a complaint in this court on October 22, 2014 naming the Warden, the Corrections Commissioner, and the Parole Board as defendants (2014 Lawsuit). Case. No. 14-cv-473-LM, Doc. No. 1 at 1. He amended his complaint on May 11, 2015 to add Marshall as a defendant. Case No. 14-cv-473-LM, Doc. No. 84 at 9.

On July 25, 2015, Correctional Officers David Dionne and Korey McCauley attempted to move Staples to a new cell within SHU, where Staples was then housed. Doc. No. 49-2 at 53. Although the officers repeatedly told Staples to pack his belongings and prepare to be moved, he refused and made it clear that he would not leave his cell voluntarily. Id. at 22-24. McCauley and Dionne later consulted with Marshall and they decided to use Oleoresin Capsicum Spray, ("pepper spray") to gain Staples' compliance, as authorized under official department policies and procedures.[2] Doc. No. 49-16 at 2. Armed with the spray, Marshall approached Staples' cell and repeatedly ordered him to "cuff up." When staples refused, Marshall told

---

[2] NH Department of Corrections Policy and Procedure Directive (PPD) 5.58, entitled "Use of Physical Force in Departmental Activities," outlines and "establish[es] the parameters for the use of physical force options" by corrections staff in certain situations. See Doc. No. 49-25 (filed under seal). It authorizes a "reasonable level of physical force" through a variety of options, when used to "regain control of an offender, [or] restore order," among other situations. Id. Force is only authorized, however, once other available means have been exhausted, such as "officer presence or verbal de-escalation." Id. Use of pepper spray is an option available to corrections staff certified to use it through special training. Id. The PPD authorizes use of pepper spray to temporarily incapacitate an individual whenever "verbal direction fails to achieve compliance and/or it becomes apparent that physical force may be necessary." Id. The PPD also requires notice to the offender prior to use of the spray, as well as notice to medical staff after it is used. Id. It is considered a safer alternative to physically bringing an inmate under control, and must cease immediately once the offender "has been incapacitated." Id. At the time of the incident, Marshall was certified to use pepper spray. Doc. No. 49-18 at 3.

4

him that he would be sprayed if he did not comply. Staples responded, "spray me, tase me, do whatever the fuck you want." Doc. No. 49-16 at 3.

Marshall then dispersed the pepper spray into Staples' cell by spraying it through the rectangular "tray slot" on the lower half of the cell door. Pursuant to PPD 5.58, which requires staff to record any event where pepper spray "is used as a planned use of force option, e.g., cell extraction," the event was videotaped using a handheld audio and visual recording device. See Doc. No. 49-25; Doc. No. 49-18 at 3. In the recording, Marshall can be seen and heard spraying the substance into Staples' cell for approximately nine seconds as Staples backed away from the cell door.[3] Marshall explained that he believed he used the amount of spray reasonably necessary to have the desired effect, considering the size of Staples' cell and the fact that he had backed up away from the door and covered his face. Doc. No. 49-18 at 4.

Nurse Dufresne was called to Staples' cell shortly after the incident to observe him through the cell window, in accordance with PPD 5.58. Doc. No. 49-8 at 1. She noted that

---

[3] Following the incident, Marshall explained that he chose to use a canister with a "cone" nozzle, rather than one with a "stream" nozzle. Doc. No. 49-18 at 3. The former produced a "mist" that filled Staples cell, whereas the latter kind of canister would have required him to spray Staples in the face.

5

he had a runny nose, but was not rubbing his eyes and did not say he was in any distress. Doc. No. 49-8 at 1-2. Officers were able to get Staples to comply with the cuff-up order and leave his cell approximately 90-minutes later, at which time he was provided a shower and offered medical attention. Doc. No. 49-17 at 2; Doc. No. 49-18 at 6.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "has the potential to change the outcome of the suit." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). A dispute about such a fact is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." Id. at 94.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party, which must

"produce evidence on which a reasonable trier of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323 and Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)).

### III. ANALYSIS

Defendants argue that they are entitled to qualified immunity. "Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Marrero-Mendez v. Calixto-Rodriguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). I need not reach the second prong of the qualified immunity analysis in this case because the record does not support a claim that either defendant violated Staples' constitutional rights.

**A.   Eighth Amendment Claims**

1. The Excessive Force Standard

The Eighth Amendment prohibits corrections officers from using excessive force on convicted prisoners. Whitley v. Albers, 475 U.S. 312, 327 (1986). Force is "excessive" for

7

Eighth Amendment purposes if it involves the "unnecessary and wanton infliction of pain." Id. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (citing Ingraham v. Wright, 430 U.S. 651, 671 (1977) (internal quotations omitted)). The Eighth Amendment's excessive force test has both an objective component—whether the pain inflicted was sufficiently serious—and a subjective component—whether the defendant inflicted the injury "unnecessarily" or "wantonly." Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

The objective component requires the use of more than minimal force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotations and citations omitted)). The Supreme Court has cautioned on more than one occasion that the test's objective component focuses on the force used and not the injury sustained. See, e.g., Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." (citing Hudson, 503 US at 10)).

The subjective component requires a court to determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7 (1992)(quoting Whitley, 475 U.S. at 320-21). To determine whether force was used in good faith to maintain or restore discipline, the court should evaluate "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of [the] injury inflicted," the threat reasonably perceived by the responsible officials, and efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005).

2. 2013 Incident

Staples claims that Parent used excessive force during the 2013 Incident. I reject this claim because no reasonable jury could conclude from this record that Parent acted "maliciously and sadistically for the very purpose of causing harm" during the 2013 Incident.

The record reveals that Parent used force only after he repeatedly attempted to persuade Staples to comply with the prison's beard policy and only after Staples openly defied his directive to complete the statement form. At that point, Parent found himself in a confined space with a defiant inmate who was

9

neither shackled nor handcuffed.  He faced an immediate need to regain control of a deteriorating situation.  Parent was thus entitled to use force both to protect himself from possible injury and to restore order.  The degree of force he used was also reasonable under the circumstances:  it was brief in duration, it was responsive to an immediate need, and it did not result in any lasting injuries.  The record evidence concerning the incident itself is thus inconsistent with Staples' claim that Parent used force against him for an improper purpose.

   Staples nevertheless argues that Parent's instruction to write down why he wanted "a PC" is proof of Parent's malicious intent.  According to Staples, Parent knew that "PC" was a term used to refer to inmates who must be protected from other inmates and often was applied to "rat[s], snitch[es], and sex offender[s who] get extorted and raped."  Doc. No. 49-2 at 8.  Staples asserts that by loudly branding him "a PC" in the presence of other inmates, Parent was hoping that Staples would be treated as a "rat," "snitch," or "sex offender" by other inmates and would be abused accordingly.  Doc. No. 49-2 at 8.  I am unpersuaded by Staples' speculative argument.  Even if Parent made the PC reference in an effort to pressure Staples into shaving, it is insufficient to support a triable claim that Parent used force against him to punish him rather than to regain control of a deteriorating situation.  Accordingly, I

grant Parent's motion for summary judgment on Staples' excessive force claim against him.

3. 2015 Incident

Staples also argues that Marshall violated his Eighth Amendment rights by using pepper spray to extract him from his cell. I reject this argument because the record leaves no doubt that Marshall used the pepper spray to maintain order and discipline rather than to maliciously cause harm.

A correctional officer may use a chemical agent such as pepper spray to subdue an inmate who is causing a disturbance without violating the Eighth Amendment if the chemical agent is used for a proper purpose and it is accompanied by appropriate safeguards. See, e.g., Torres-Viera v. Laboy-Alvarado, 311 F.3d 105 (1st Cir. 2002); Burns v. Eaton, 752 F.3d 1136, 1139-41 (8th Cir. 2014); Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002). In the present case, undisputed evidence demonstrates that Marshall used the pepper spray in a manner that was reasonable under the circumstances and for the proper purposes of maintaining order and discipline. First, Marshall did not use the pepper spray until after Officers Dionne and McCauley had made repeated efforts to persuade Staples to leave his cell voluntarily. Second, Marshall warned Staples that he would be sprayed if he did not comply. Staples' response of "spray me" left no doubt that force would be required to extract him from

his cell. Third, the amount of pepper spray used was not excessive. Fourth, Staples was offered a shower as soon as he agreed to leave his cell. Finally, Staples did not suffer any lasting injuries. When viewed together, this undisputed evidence leaves no doubt Marshall used the pepper spray to maintain order and discipline rather than to maliciously harm Staples.[4]

Staples nevertheless argues that Marshall violated his Eighth Amendment rights because "prison policy" requires officials to use an extraction team to attempt to remove an inmate from the cell before resorting to pepper spray. This argument is a nonstarter. Notwithstanding Staples' claim to the

---

[4] Although Staples does not press the point, one might argue that even if Marshall's use of the pepper spray was objectively reasonable under the circumstances, Marshall could still be held liable if his use of the spray was maliciously or sadistically motivated. In other words, one could argue that an Eighth Amendment violation can be premised upon an objectively reasonable use of force if the defendant's predominant intention is to inflict harm rather than to preserve order. Although perhaps viable under different circumstances, that proposition does not deserve serious consideration in light of this record. Staples' presents no direct evidence of Marshall's punitive intent towards him, nor has he identified any other evidence that Marshall selectively used pepper spray against him but not other similarly situated inmates. Absent any such evidence of malicious or sadistic intent, a claim premised on this objectively reasonable use of force could not possibly succeed. The minimal amount of spray dispersed by Marshall, the timely presence of Nurse Dufresne at his cell, and the shower provided to Staples once he was finally removed make even the vaguest argument to the contrary more untenable. Such protective actions are hardly indicative of malicious intent.

contrary, prison policies permit the use of pepper spray to effect a cell extraction, see Doc. No. 49-25, and Staples has failed to identify any other policy that requires the use of an extraction team before pepper spray is used. Accordingly, I grant Marshall's motion for summary judgment with respect to Staples' excessive force claim against Marshall.

B. **First Amendment Claim**

Staples also argues that Marshall violated his First Amendment rights during the 2015 incident when Marshall pepper sprayed him in retaliation for filing the 2014 lawsuit.

To prove a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) the defendant took an adverse action against him; and (3) there is a causal link between the protected activity and the adverse action. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). A plaintiff may attempt to satisfy the causal link requirement by proving that his protected activity was a "substantial" or "motivating" factor for the adverse action, but the defendant may still prevail if he can prove that he would have taken the action "even in the absence of the protected conduct." [5] Broderick v Roache, 996 F.2d 1294, 1297 n.5 (1st

---

[5] In McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979), the First Circuit held that a plaintiff must prove that his protected activity was a "but for" cause of the defendant's conduct to establish a First Amendment retaliation claim. Although the

13

Cir. 1993) (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1997)).

Marshall targets the causal-link element of Staples' retaliation claim. Staples responds primarily by arguing that Marshall's retaliatory motive can be inferred from evidence tying Marshall to delivery of a phony "Hurt Feelings Report" form to Staples' cell on December 24, 2014, approximately two months after Staples filed the 2014 complaint.[6] He then argues that this evidence is sufficient to give rise to a viable retaliation claim given the temporal connection between the 2014 complaint and Marshall's use of the pepper spray.

I am ultimately unpersuaded by Staples' argument because even if the evidence he cites is minimally sufficient to establish that Marshall was angry with Staples for filing the 2014 lawsuit, the other undisputed evidence I have already

---

court cited Mount Healthy for this requirement, the court's reading of Mount Healthy in McDonald cannot be reconciled with the court's more recent decisions. See, e.g., McCue v. Bradstreet, 807 F.3d 334, 338-39 (1st Cir. 2015); Broderick v Roache, 996 F.2d 1294, 1295 n.5 (1st Cir. 1993). Accordingly, I assume for purposes of analysis that Staples would not need to establish "but for" causation to prevail on his retaliation claim.

[6] Staples links Marshall to the Hurt Feelings Report form with inadmissible hearsay evidence and his claim that Marshall approached him a few days after Staples received the form and asked him, "did you get that?" Doc. 49-2 at 68. I will assume for purposes of analysis that this evidence is minimally sufficient to permit a reasonable jury to conclude that Marshall was somehow connected to the Hurt Feelings Report form.

14

discussed leaves no doubt that he would have taken the same action regardless of any retaliatory motive. Accordingly, I grant Marshall's motion for summary judgment with respect to Staples' retaliation claim.

## IV. CONCLUSION

For the reasons stated in this Memorandum and Order, I grant the defendants' motion for summary judgment. Doc. No. 49. The clerk is directed to enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro_____
Paul Barbadoro
United States District Judge

July 3, 2018

cc: Donna J. Brown, Esq.
    Francis Charles Fredericks, Esq.
    Seth Michael Zoracki, Esq.